**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                  Plaintiff,<br><br>   -against-<br><br>NEW YORK STATE DEPARTMENT OF CIVIL<br>SERVICE; CITY OF MOUNT VERNON; FIRE<br>DEPARTMENT OF THE CITY OF MOUNT<br>VERNON,<br><br>                Defendants. | 80 Civ. 0336 (JGLC)<br><br>[PROPOSED]<br>**2024 REVISED**<br>**CONSENT JUDGMENT**<br>**REGARDING**<br>**MOUNT VERNON** |

The Court, having subject matter jurisdiction over the claims in the complaint in this action, finds and the plaintiff the United States of America (the "United States"), defendants New York State Department of Civil Service (the "State Defendants"), and the City of Mount Vernon and the Fire Department of the City of Mount Vernon (the "City Defendants"), agree:

THAT, the United States filed a complaint in this Court on January 17, 1980, against defendants, the New York State Department of Civil Service and four municipalities in the County of Westchester, namely the Cities of New Rochelle ("New Rochelle"), White Plains ("White Plains"), Mount Vernon ("Mount Vernon"), and Yonkers ("Yonkers") together with various officials and employees of the New York State Department of Civil Service and the cities, alleging *inter alia* that defendants were engaged and are engaging in acts and practices which discriminated on the basis of race, color, sex and national origin with respect to employment opportunities within the fire departments of the cities in violation of the rights of Blacks, Hispanics, and women to equal employment opportunity secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*., as well as rights guaranteed

1

by the Fourteenth Amendment to the Constitution of the United States, and which constituted a pattern and practice of resistance to the full enjoyment of the rights of Blacks, Hispanics, and women to equal employment opportunities; and

THAT, the complaint further alleged that certain specified and unspecified acts of the defendants together operated to discriminate against Blacks, Hispanics, and women in hiring and promotions and tended to deprive them of equal employment opportunities by the use of tests and other selection standards and devices which have a disparate impact on Blacks, Hispanics, and women and which are neither demonstrably valid nor job-related; and

THAT, the complaint further alleged that the defendants have failed and refused to take reasonable steps to eliminate the effects of their past and present discriminatory policies and practices; and

THAT, the complaint sought an injunction against the continued use by the defendants of any discriminatory employment practices based on race, color, national origin and sex and against the use of any employment practice which operates to continue the effects of past discriminatory employment practices, together with affirmative relief, including back pay, for affected individuals; and

THAT, the Equal Employment Opportunity Commission found, at the time this action was filed in 1980, that the employment practices heretofore employed by the Mount Vernon Defendants and the employment tests prepared and graded by the State Defendants had an adverse impact on Blacks, and may have had an adverse impact on Hispanics, who applied for employment or promotion to the fire department of Mount Vernon, and that such employment practices and tests may have had the effect of unlawfully discriminating against persons on the basis of race and national origin; and

2

THAT, the plaintiff United States and the Mount Vernon, White Plains, New Rochelle and State Defendants entered into a Consent Judgment on January 19, 1981 (copy at dkt. no. 174-2), which was amended by the Modification Order entered with regard to Mount Vernon on March 13, 2012 (dkt. no. 74) (together "Prior Decrees");

THAT, a purpose and intent of the Prior Decrees was to assure that Hispanics and women by reason of their race, national origin or sex are not disadvantaged by the hiring, assignment and promotion policies and practices within the fire department of Mount Vernon, and that any disadvantage to Hispanics or women which may have resulted from past unlawful discrimination is remedied as provided herein so that equal employment opportunity will be provided for all; and

THAT, the Mount Vernon and State Defendants believe they have both a moral and legal obligation to act at all times in the best interests of all citizens and employees, and, therefore, need not expend public funds for litigation when there is a reasonable basis for amicable resolution, in a manner consistent with the policies of Mount Vernon and the State;

THAT, the State and Mount Vernon Defendants deny that they have engaged in any practice of unlawful discrimination against Blacks, Hispanics, or women, in violation of any federal statutes or the Fourteenth Amendment to the Constitution of the United States; and

THAT, the State and Local Fiscal Assistance Act of 1972, as amended, 31 U.S.C. §§ 1221 *et seq*. (the "Revenue Sharing Act"), and the Comprehensive Employment and Training Act, as amended, 29 U.S.C. §§ 801 *et seq*. ("CETA") are no longer in effect; and

THAT, Defendant New York State Department of Civil Service, as an agency and department of the State of New York, no longer receives funds from the United States that are used with respect to the providing of employment testing services to the defendant cities; and

3

THAT in the forty years during which the Prior Decrees regarding Mount Vernon were in force, the Fire Department of the City of Mount Vernon improved its hiring and promotional practices regarding Blacks and Hispanics. According to the 2020 Census, the African-American and/or Hispanic population of Mount Vernon between the ages of 18 and 44 was approximately 66% and 7%, respectively. According to Mount Vernon counsel, the demographics of the fire department were:

|  | White | African-American | Hispanic |
|---|---|---|---|
| Commissioners | 50% | 50% | 0% |
| Deputy Chiefs | 50% | 50% | 0% |
| Fire Captains | 33% | 50% | 17% |
| Fire Lieutenants | 48% | 52% | 0% |
| Firefighters | 36% | 62% | 2% |
| Inspectors | 50% | 50% | 0% |
| Dispatchers | 30% | 50% | 20% |

THAT, despite the efforts of the parties, there are currently one female firefighter of any rank in the Fire Department of Mount Vernon, and there has only been one female firefighter at any time; and

THAT, the Plaintiff, Mount Vernon, and the State Defendants further modified that Consent Judgment on April 6, 2016 (dkt. no. 121), which terminated the original Consent Judgment to the extent that it applied to Blacks, in light of the progress that Mount Vernon has made toward Black representation in the Mount Vernon Fire Department;

THAT, the State Defendants have developed and validated updated entry-level written exams for the Firefighter title since the imposition of the Prior Decrees, the most current version having been developed and validated effective 2019 (the "2019 Exam"); and

4

THAT, the parties to this action have conferred and negotiated changes to the Prior Decrees to seek to increase the number of women firefighters, remove outdated provisions, and clarify the rights and obligations of the parties, to create this 2024 Consent Judgment; and

THAT, the State Defendants do not concede by their agreement to the 2024 Consent Judgment that they are an employer or an agent of an employer within the meaning of Section 701(b) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e(b), or that this Court has subject matter jurisdiction over the State Defendants under the said Title VII, and that the State Defendants specifically reserve their right, if any, to present these issues to the Court; provided, however, that any adjudication of the issue of the State Defendants' status as such an employer or agent thereof under Title VII or the subject matter jurisdiction of the Court over the State Defendants under Title VII shall not otherwise affect the State Defendants' obligations under the terms and provisions of this 2024 Consent Judgment as provided herein nor the enforcement of this 2024 Consent Judgment as provided herein; and

THAT, the consent of the parties to this 2024 Consent Judgment shall in no way constitute nor be construed as an admission by the Mount Vernon Defendants of any violation of the federal statutes or the Fourteenth Amendment to the Constitution of the United States which form the basis of this action; and

THAT, the parties to this 2024 Consent Judgment desire to effect a settlement of the issues raised by the complaint as amended, herein without the necessity for a protracted course of litigation and have, therefore, consented to the entry of this 2024 Consent Judgment as final and binding to those issues or claims raised in said complaint or which could have been raised as to defendants' practices prior to the filing of this action; and

THAT, the parties to this 2024 Consent Judgment agree to waive the entry of any further finding of facts and conclusions of law; and

5

THAT, to the extent it may be relevant, the parties to this 2024 Consent Judgment are of the view that the terms of this 2024 Consent Judgment are consistent with the laws of the State of New York; and

THAT, to the extent that there is any inconsistency between the provisions of this 2024 Consent Judgment Regarding Mount Vernon with the Consent Judgment Regarding Mount Vernon entered in case number 78 Civ. 911 (S.D.N.Y.), the provisions of this 2024 Consent Judgment shall control;

THAT, the terms of this 2024 Consent Judgment supersede the Prior Decrees entered in this case as to Mount Vernon;

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:**

## I.    Definitions

As used herein:

A.    Mount Vernon Defendants. "The Mount Vernon Defendants" shall mean and refer to City of Mount Vernon, New York, its fire department, its civil service commission, and all persons in active concert or participation with or under the control or direction of any of them.

B.    State Defendants. "The State Defendants" shall mean and refer to defendant New York State Department of Civil Service, its officers, and all persons in active concert or participation with or under the control or direction of any of them.

C.    Title VII. "Title VII" shall mean and refer to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*. together with all applicable regulations promulgated thereunder and with respect thereto.

D.    Black or Blacks. "Black" or "Blacks" shall mean and refer to any person or persons having origins in any of the black racial groups.

6

E.      Hispanic or Hispanics. "Hispanic" or "Hispanics" shall mean and refer to any person or persons of Mexican, Puerto Rican, Cuban, Central or South American, or other Spanish culture or origin, regardless of race. For purposes of this 2024 Consent Decree, the term "Spanish" shall be limited to "Latin American."

## II.      Procedures for Selection of Firefighters

A.      The Mount Vernon Defendants shall consider applications for employment in their fire department from any person who meets the criteria for application and appointment to any position without regard to such person's race, national origin or sex. Until such time as the hiring goals set forth in Section IV hereof are once reached, the procedures for the selection of firefighters in Mount Vernon shall be as specified in Sections II and III of this 2024 Consent Judgment.

B.      Subject to the additional requirements set forth below in paragraphs II and II.D candidates for appointment to the entry level title of Firefighter shall be selected on the basis of their performance on an examination consisting of a ranked written test and a physical strength/agility test.

1.      Written Test. The Mount Vernon Defendants shall administer a written test(s) which shall be ranked, to eligible applicants for appointment to the title of Firefighter. The Mount Vernon Defendants, pursuant to New York Civil Service Law § 23, shall request and upon such request, the State Defendants shall prepare, construct, and rank a written test(s) for the use by the Mount Vernon Defendants in accordance with the following standards and procedures:

a. The written test(s) shall be constructed in accordance with New York Civil Service Law § 50.

7

b. For the written test supplied by the State Defendants, the subject areas tested for the Firefighter title will be those subject areas utilized by State Defendants for the testing of entry-level firefighters statewide and may change pursuant to Civil Service's consultation with New York State Fire Advisory Committee and future studies to measure the skills, abilities, and characteristics deemed critical for an entry-level firefighter. The State Defendants will score the written test used in City of Mount Vernon in the same manner used to score the Firefighter test administered for the rest of the State of New York.

c. The State Defendants shall, at the time they supply written tests for firefighter, fire lieutenant and fire captain to New York municipalities, including Mount Vernon, explicitly request that such municipalities distribute, collect and transmit questionnaires provided by the State Defendants that request that applicants taking a written test identify themselves by certain bio-data categories, including, race or ethnicity, and sex. The provisions of this subparagraph, however, shall not be construed: to require any applicant to provide such information, to prohibit the sharing of such information by the State Defendants with the municipalities from which it was obtained, or to subject such forms to disclosure under any state or federal Freedom of Information law. This form shall prominently explain that the data is being sought pursuant to New York Executive Law, section 296(1)(d), and that the data is subject to applicable New York State personal privacy protection laws.

d. In rating the written test(s), the State Defendants may, for the purpose of remedying or eliminating unforeseen defects in the construction or design of a question or a test, apply those practices and procedures which are standard and accepted in the field of employment testing and consistent with Title VII and the New York Civil Service Law; provided, however, that the use of such practices and procedures shall precede the application of the procedures set forth in subparagraph b above.

8

e. Consistent with Part 67 of the Regulations of the New York State Department of Civil Service, all eligible applicants who achieve a minimum written test score of seventy (70) shall be eligible to take the physical strength/agility test, as set forth in subparagraph B.2 of this Section.

f. The subject areas to be tested shall be those subject areas utilized by Civil Service for the testing of entry-level firefighters statewide and may change at Civil Service's discretion and expertise pursuant to Civil Service's consultation with New York State Advisory Council for Fire Prevention and Control and any of its future studies to measure the skills, abilities, and characteristics deemed critical for successful firefighter performance.

g. The provisions of this 2024 Consent Judgment notwithstanding, the State Defendants shall, under no circumstances be obligated to prepare, construct, and rank a test for the title of Firefighter more than once per calendar year at the request of the Mount Vernon Defendants or any other New York municipality.

h. The Mount Vernon Defendants retain the option of preparing, constructing, and rating the written test(s) pursuant to New York Civil Service Law § 17(4) in lieu of requesting such services from the State Defendants under New York Civil Service Law § 23(2); provided that the preparation, construction and rating of such test(s) conforms to the provisions of this 2024 Consent Judgment.

i. The Mount Vernon Defendants shall notify each applicant who took the written test whether he or she is qualified to take the physical strength/agility test. This notice shall be in writing addressed to the applicant at the address provided by the applicant for such purpose and shall advise applicants who have qualified of the date(s) and location(s) of the physical strength/agility test and the date(s) and location(s) of the demonstration/ familiarization sessions, in accordance with subparagraphs V.B.4.e and f of this 2024 Consent Judgment.

9

j. Nothing contained in this 2024 Consent Judgment shall be construed to prevent any New York municipality, other than Mount Vernon, from determining the weight to be accorded any written test or any part thereof which may be a component of the selection process for the title of Firefighter or its equivalent.

2.    Physical Strength /Agility Test. Beginning with the next regularly scheduled testing cycle, which the parties anticipate may occur as early as 2027, the Mount Vernon Defendants shall administer the Candidate Physical Abilities Test developed by the National Testing Network, in accordance with International Association of Fire Fighters (IAFF) standards, to all applicants who qualify on the basis of the written test. Those applicants who pass these tests shall be placed on a resident or non-resident eligible list for appointment to the title of Firefighter in Mount Vernon. All future appointments to the title of Firefighter shall be made from the eligible lists established in this manner and consistent with paragraph II.C below.

C.    With respect to other requirements for examination and appointment to the position of firefighter which have been utilized by the Mount Vernon Defendants, the following shall apply:

1.    High School Diploma: Mount Vernon shall immediately cease to require a high school diploma or its equivalent as a prerequisite to or requirement of continuing employment as a firefighter, nor shall the assignments, duties or responsibilities of a firefighter be based upon his/her possession of a high school diploma or its equivalent. Possession of a high school diploma or its equivalent shall continue to be a prerequisite for appointment to the title of a Fire Lieutenant, but shall not a prerequisite for eligibility to take the examination to qualify for the title of Fire Lieutenant.

2.    Age Requirement: Applicants must not be less than seventeen and a half (17 1/2) years old and must not have reached their 35th birthday by the date of the written test. Eligibility for appointment as a firefighter begins when an applicant reaches his or her 18th birthday. Applicants

who lack one month or less of the minimum age requirement shall be deemed eligible if otherwise qualified.

3.    <u>Effect of Military Duty on Age Limits</u>: The Mount Vernon Defendants may continue to provide veterans credit for purposes of meeting the age requirement. The Mount Vernon Defendants shall inquire whether candidates have previously used any veterans credits.

4.    <u>Residence</u>: Applicants must be legal residents of Westchester County for at least twelve (12) continuous months immediately preceding the date of the written test and must be residents of the County at time of appointment. Preference in appointment will be given to successful candidates who have been legal residents of Mount Vernon for at least twelve (12) continuous months immediately preceding the date of the written test and on the date of appointment.

5.    <u>Conviction Bar</u>:

a. Subject to the conditions and procedures set forth herein in subparagraph b, and subject to a determination of eligibility in accordance with the factors set forth in § 753 of the New York Corrections Law, an applicant may be disqualified for appointment to a title in the Fire Department of Mount Vernon if the applicant has been convicted of a felony and there is a direct relationship between one or more of the previous criminal offenses and the specific title sought in the Fire Department of Mount Vernon pursuant to § 752(1) of the New York Corrections Law or granting the employment would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public pursuant to § 752(2) of the New York Corrections Law.

b. The following procedures shall apply to the conditional bar set forth in subparagraph 5.a:

(1) The names of such applicants shall be listed on the eligible list for appointment if they otherwise qualify for placement on the eligible list.

11

(2) The fact of such conviction shall be noted by the Mount Vernon Civil Service Commission (the "Commission") when, in the course of certifying candidates for appointment, the Commission reaches the name of an applicant having such conviction in his or her record or having a history of drug abuse.

(3) No applicant shall be disqualified for appointment by reason of conviction or history of drug use, except after written notice specifying the grounds for such disqualification and an opportunity to appear before the Commission and be heard, and to present evidence and witnesses as to why his or her conviction or having a history of drug use should not bar the applicant's appointment.

(4) Upon request, the applicant shall be provided, in advance of the opportunity to be heard, with copies of any documents including those contained in his or her file record, if one is maintained by the Commission and upon which the Commission relied in notifying the applicant of its intention to disqualify the applicant.

(5) In determining whether or not to disqualify an applicant because of a conviction the Commission shall consider the factors set forth in § 753 of the New York Corrections Law; except that, in considering those factors with respect to a history of drug abuse, the words "drug abuse" shall be understood and applied in place of "criminal offense" or "conviction" in the statute.

(6) A position shall be held open for the applicant until the above procedures are exhausted.

12

(7) The determination of the Commission pursuant to these procedures shall be reviewable under the provisions of Article 78 of the New York Civil Practice Law and Rules.

(8) The final determination of the Commission and the grounds upon which it is based shall be set forth in a written notice to applicant. If the final determination is to disqualify the applicant, the notice of final determination shall advise the applicant that the said determination is reviewable under the provisions of Article 78 of New York Civil Practice Law and Rules.

6.    Driver's License: Possession of a Class D license shall be the sole driver's license prerequisite for appointment to the title of Firefighter.

7.    Other Requirements: The other requirements for appointment to the fire department of Mount Vernon, relating but not limited to medical, hearing and vision requirements, and citizenship, shall not be affected by this 2024 Consent Judgment; provided, however, that if there is any claim by plaintiff that any such requirement is being applied in a manner which unlawfully excludes Hispanics or women from employment, then the procedures set forth in subparagraph 8 below, shall apply.

8.    If any claim is made that any of the requirements referred to in sub-paragraphs 5, 6, or 7, above, are being applied in a manner which unlawfully excludes Hispanics or women from employment, the plaintiff and the Mount Vernon Defendants agree to confer to consider the retention or modification of these requirements through informal resolution. If such resolution is not possible, the plaintiff and the Mount Vernon Defendants or any of them may refer the matter to this Court.

### III.    Procedures for Promotions

A.    1.  The Mount Vernon Defendants shall administer a written test(s) to eligible applicants for appointment to the titles of Fire Lieutenant and Fire Captain. Pursuant to New York Civil Service Law § 23 and subject to the provisions of subparagraph II.B.l.h of this 2024 Consent Judgment, the Mount Vernon Defendants shall request, and upon such request the State Defendants shall prepare, construct, and rank, the written test(s) for use by the Mount Vernon Defendants in accordance with the standards and procedures set forth in sub-paragraphs II.B.l.a, c, and d of this 2024 Consent Judgment and sub-paragraph II.B.1.b. and the following:

a. Tests shall be administered periodically, provided, however, that the State Defendants shall, under no circumstances, be obligated to prepare, construct, and rank a fire lieutenant's or fire captain's test more than once every two years at the request of the Mount Vernon Defendants or any other New York municipality.

b. For the written test supplied by the State Defendants, the subject areas tested for the Fire Lieutenant and Fire Captain titles will be those subject areas utilized by State Defendants for the testing of the titles of Fire Lieutenant and Fire Captain statewide and may change pursuant to Civil Service's consultation with New York State Fire Advisory Committee and future studies to measure the skills, abilities, and characteristics deemed critical for the titles of Fire Lieutenant and Fire Captain. Civil Service will score the written test used in City of Mount Vernon in the same manner used to score the Fire Lieutenant or Fire Captain test administered for the rest of the State of New York. The State Defendants shall publish on their website a recommended reading list to provide guidance on the subject areas covered by any promotional test at the time the test is announced.

c. The State Defendants shall, at the time they supply written tests for Fire Lieutenant and Fire Captain titles to the New York municipalities, including Mount Vernon, explicitly request

14

that such municipalities distribute, collect and transmit questionnaires provided by the State

Defendants that request that applicants taking a written test identify themselves by certain bio-data

categories, including, race or ethnicity, and sex. The provisions of this subparagraph, however, shall

not be construed: to require any applicant to provide such information, to prohibit the sharing of such

information by the State Defendants with the municipalities from which it was obtained, or to subject

such forms to disclosure under any state or federal Freedom of Information law. This form shall

prominently explain that the data is being sought pursuant to New York Executive Law, section

296(1)(d) and that the data is subject to applicable New York State personal privacy protection laws.

        d.      Consistent with the provisions of 4 N.Y.C.R.R. Part 67, all eligible

applicants who achieve a written test score of seventy (70) or higher shall pass the test.

        B.      Effective with the test for fire lieutenant to be given pursuant to subparagraph A.1.a

above, and thereafter, the length of qualifying experience for taking the written test for fire lieutenant

and for appointment as a fire lieutenant in Mount Vernon shall be as follows: to be eligible to take the

test, a candidate must be permanently employed in the competitive class in the fire department of

Mount Vernon on the date of the written test and must have served continuously on a permanent

basis in the Firefighter title for 3 years 6 months. To be eligible for appointment to the position of fire

lieutenant, a candidate must be permanently employed in the competitive class in the fire department

of Mount Vernon and have been so employed for 4 years and 6 months as of the date of appointment.

Candidates for appointment to the position of fire lieutenant shall be placed on the eligible list only at

the time they satisfy the above requirements, at which time they shall be placed on the list according

to their test score rank.

        C.      Beginning November 20, 2026, each Eligible List for promotion to higher officer

ranks established by Mt. Vernon on the basis of this Section III shall be used for two years and no

longer.

## IV.    Hiring Goals and Interim Hiring Goals

A.    Pursuant to the provisions of this 2024 Consent Judgment, the Mount Vernon Defendants shall undertake in good faith to hire firefighters so as to achieve the goal of a firefighting force which reflects no less than the proportion of Hispanics between the ages of eighteen (18) and forty-four (44) in the civilian labor force of Mount Vernon as reported by the U.S. Census Bureau in the most recently published decennial census then available.

B.    Pursuant to the provisions of this 2024 Consent Judgment, the Mount Vernon Defendants shall undertake in good faith to make promotions to the ranks of fire officers in the fire department of Mount Vernon so as to achieve the goal of a fire officer corps which reflects the proportion of Hispanics and women among the firefighters of the fire department of Mount Vernon.

C.    As a continuing interim goal, and for the purpose of meeting the goals set forth in this Section, Mount Vernon shall use its best efforts to recruit and hire firefighters in accordance with the terms of this 2024 Consent Judgment so that Hispanics may be hired in no less proportion than their representation in the age group of eighteen (18) to thirty (30) in the civilian labor force of Mount Vernon as reported by the U.S. Census Bureau in the most recently published decennial census then available.

D.    Pursuant to the provisions of this 2024 Consent Judgment, the Mount Vernon Defendants shall undertake in good faith to use their best efforts to recruit and hire firefighters so that women constitute at least ten percent (10%) of the firefighters hired.

E.    The goals set forth in this 2024 Consent Judgment are aspirational and are not under any circumstance to be interpreted as quotas, targets, or preferences. Goals are to be met by the Mount Vernon Defendants' good faith implementation of the acts required of them by this 2024 Consent Judgment. It is understood that the failure to achieve the goals set forth herein because of lack of interest in becoming firefighters among Hispanics and women, not resulting from the failure

of the Mount Vernon Defendants to fulfill the terms of this 2024 Consent Judgment, shall be sufficient reason for failure to meet the goals if this 2024 Consent Judgment is otherwise complied with. It is further understood that the Mount Vernon Defendants shall take no steps which have the purpose or reasonably foreseeable effect of contributing to any such lack of interest unless such steps have a valid and substantial municipal or State purpose.

## V.    Recruitment and Training

A.    The Mount Vernon Defendants agree to develop and implement an active and continuing recruitment program to attract and increase Hispanic and women applicants for the position of firefighter. The Mount Vernon Defendants shall engage Hispanics, and Women on a continual year-round basis, even at times when a firefighter's entrance exam is not being given, with the intent to stimulate their interest in joining the Fire Department. The Mount Vernon Defendants agree to collaborate with the Vulcan Society plaintiffs in these ongoing, year round recruitment efforts. The Mount Vernon Defendants can seek, when possible, grants and additional funding to accomplish the recruitment goals set forth in this Consent Decree. The Mount Vernon Defendants shall make extensive efforts to collaborate with organizations serving Minorities and Women in Mount Vernon, as may be designated by the Vulcan Society from time to time. The recruitment program shall be ongoing with maximum efforts undertaken by the Mount Vernon Defendants prior to each written test administered in Mount Vernon until such time as the hiring goals set forth in Section IV are met. The recruitment program shall include at least the following steps in order to maximize opportunities for recruitment:

1.    The period for the filing of applications shall be seventy (70) days.

2.    Application forms in sufficient numbers shall be available on the City of Mount Vernon's official website, in all city buildings, within the human resources offices of Mount Vernon and in locations within the Hispanic community. Applications shall also be available for

17

distribution through recruitment personnel and community groups specifically serving Hispanics or women, including the Vulcan Society of Westchester County, Inc.

      3.     Applications may be submitted online or by delivering them to designated locations, at least some of which must be conveniently located within Hispanic community areas.

      4.     The application forms shall specify, among other things, the telephone number and email address of a person within Mount Vernon who may be called by prospective applicants wishing clarification and/or assistance in the completion of an application form.

B. The Mount Vernon Defendants shall undertake to stimulate interest of Hispanics and women in the application process through the use of media campaigns in the press and radio, grass roots appeal, retention measures, training and recruitment.

      1.     Media Campaign. The Mount Vernon Defendants shall publicize no less than five times in one local newspaper of general circulation, and five times jointly in one newspaper serving the Hispanic community, employment opportunities in the fire department. These advertisements shall be scheduled to appear regularly during the period for the submission of applications and shall contain, in substance, all of the information included in the job announcement pamphlet, including information about training sessions to be given for these examinations. Counsel for the plaintiff shall be advised of the content and scheduling of these advertisements, as well as the newspapers which are to carry them, at least two weeks prior to the commencement of such advertisements. The Mount Vernon Defendants shall request the local radio station directed at the Hispanic community to make regular public service announcements of the Firefighter written examination and employment opportunities. Similar requests shall be made of television stations servicing the communities. Counsel for the plaintiff should be advised of these requests.

2.    Grass Roots Appeal:

a. The Mount Vernon Defendants shall send informational pamphlets about opportunities in the fire department to associations whose purpose it is to promote employment opportunities for Hispanics and women and to appropriate educational institutions, including public and private high schools in Mount Vernon, and to colleges, civic, religious and other organizations with significant Hispanic or female membership which shall be designated by the plaintiff's counsel, advising them of the opportunities in the fire department and the availability of training sessions to be given, and advising them that all jobs are open to Hispanics and women. Such informational pamphlets shall acknowledge the recruitment efforts of the Mount Vernon Defendants and describe the requirements for employment as firefighters.

b. Job announcement pamphlets publicizing job opportunities within the Mount Vernon Fire Department and the availability of training sessions to be given shall be posted in city, county and State government buildings, including schools, office buildings and libraries in Mount Vernon. Such job announcement pamphlets with respect to an examination for firefighters shall contain information as to the places and times when applications may be made, the date, time and place for administration of the written test(s), all the minimum qualifications needed to take the written test(s), a brief description of the physical agility/strength test(s) to be given, and a brief description of the types and topics of questions that are likely to appear in the written test(s).

3.    Retention. To assist in the retention in the appointing process of those Hispanic or women candidates on the eligible list, the Mount Vernon Defendants shall notify the plaintiff in writing of a pending appointment at the same time as the candidate is notified, which notice shall be no less than ten (10) days prior to the date of the anticipated appointment unless otherwise agreed between counsel for plaintiff and counsel for the Mount Vernon Defendants.

4.    <u>Training</u>:

a. The Mount Vernon Defendants shall conduct training sessions between the application deadline and the date of administration of all written tests to be given for the position of firefighter. Training sessions shall each be of three (3) hours duration and shall be held once a week for six (6) consecutive weeks in Mount Vernon during evening hours. Any applicant can attend any of the training sessions in Mount Vernon without payment of any fee or satisfaction of any registration or other requirement. The Mount Vernon Defendants shall coordinate the scheduling of training sessions so that the subject matter of each session is covered on at least two different days in each week.

b. The Mount Vernon Defendants shall also conduct training sessions for the fire lieutenant's tests in accordance with the terms set forth in sub-paragraph a above, except that such training sessions may be conducted jointly with New Rochelle and/or White Plains in a common location in one of the three Defendant cities on one day in each week.

c. Such training sessions shall be designed and implemented by the Mount Vernon Defendants with the assistance of the State Defendants. The State Defendants shall make available on the website for the Department of Civil Service testing guides for the Firefighter, Fire Lieutenant, and Fire Captain titles that will be updated as necessary to reflect the subject areas to be tested:

(1) The scope or subject areas to be covered in the written test;

(2) The maximum amount of time an applicant will be given to complete the written test;

(3) Examples of questions from prior written tests to the extent they fairly represent the form and content of questions on the impending test; provided, however, that such examples shall be provided only under an agreement of

confidentiality or protective order and may not be used in their exact form but

rather only for the purpose of designing comparable examples;

(4) Useful test-taking techniques; and

(5) Sources of information available to the general public of which the State

Defendants are aware and which may be a useful reference source for

applicants in preparing for the written test.

d. A training session shall consist of written study materials and formal

classroom training in skills needed to familiarize applicants with the form and general content of the

written tests. The training sessions shall describe the subjects to be covered in the respective tests, as

specified by the State Defendants pursuant to subparagraph c above. Similarly, the timing,

mechanics, format, and method of grading of the tests shall be described to applicants.

e. The Mount Vernon Defendants shall conduct a

demonstration/familiarization session between the date on which Mount Vernon is notified by the

State Defendants of the results of the written tests for firefighters and the date of the administration of

the physical strength/agility test. The demonstration/familiarization session shall be of at least three

(3) hours duration and shall include a description and demonstration of the types of events to be

included in the physical strength/agility tests in Mount Vernon together with a description of the time

limits and method of grading applicable to the physical strength/agility tests, and opportunity to

simulate the test events using the same or similar equipment and physical facilities.

f. Insofar as possible, the training sessions required herein shall be announced

at the same time and in the same manner as announcements of the examinations.

5.    Recruitment.

a. The Mount Vernon Defendants will attempt to include, if available, a

minority or woman firefighter or officer in its public outreach to minorities program. In addition, the

21

Chief or comparable principal officer of the fire department shall be visibly involved in the recruitment program.

   b. To the maximum extent possible, recruitment literature shall refer positively to minority and women firefighters, and recruitment posters shall display minority and women firefighters.

   c. Upon consent of those Hispanics and women who are recruited, their names and addresses shall be provided to plaintiff to assist recruitment.

## VI. Reporting

 A. The State Defendants shall retain all documents for a period of at least five (5) years relating to testing and training of candidates for the Firefighter, Fire Lieutenant, and Fire Captain titles for the fire department of Mount Vernon, include the analyses referenced in subparagraphs G and H below. The Mount Vernon Defendants shall retain all documents for a period of at least five (5) years relating to the selection, appointment, promotion, recruitment, training, assignment and discipline of persons in the fire department of Mount Vernon. Plaintiff's counsel or designee shall have the right to inspect and copy any or all such documents upon reasonable notice to the Mount Vernon or the State Defendants in possession of such documents without further order of this Court. The Mount Vernon or the State Defendants shall make available such documents at plaintiff's request in writing. The parties to this 2024 Consent Judgment shall stipulate to protect the confidentiality of the State's written tests and the right to privacy of any individual.

 B. The following information, including documents, records and summaries, shall be maintained by the Mount Vernon Defendants and shall be made available promptly to the plaintiff's attorneys for inspection, or copying, or, upon the request of plaintiff's counsel, shall be furnished by the Mount Vernon Defendants.

1.      The number of applicants, by race, ethnicity and sex as so indicated by the applicant, seeking employment as firefighters with Mount Vernon's fire department.

2.      The number of applicants, by race, ethnicity and sex as so indicated by the applicant, disqualified from taking the written test, the reason for the disqualification, and the number of applicants disqualified by each reason.

3.      The number of applicants, by race, ethnicity and sex as so indicated by the applicant, who take the written tests.

4.      The number of applicants, by race, ethnicity and sex as so indicated by the applicant, who qualify or do not qualify on the basis of the written test score results, setting forth the numerical test score results of each applicant, provided that the names of the applicants who do not qualify shall remain confidential.

5.      The number of applicants, by race, ethnicity and sex as so indicated by the applicant, disqualified from taking the physical strength/agility test, the reason for the disqualification, and the number of such applicants disqualified by each reason.

6.      The number of applicants, by race, ethnicity and sex as so indicated by the applicant, who do not appear for the physical strength/agility test, or any part thereof.

7.      The physical strength/agility test score, by race, ethnicity and sex as so indicated by the applicant, for all applicants taking this test, indicating the numerical test score results for each such applicant, listing the highest score first.

8.      The number of applicants, by race, ethnicity and sex as so indicated by the applicant, who fail to pass one or more sub-tests of the physical strength/ agility test and of these applicants those who fail to pass the physical strength/agility test.

9.      The number of applicants, by race, ethnicity and sex as so indicated by the applicant, invited to take a medical, hearing and/or vision examination, the numbers of such

23

applicants who appear for such examinations, and the numbers of such applicants disqualified on the basis of the examinations and the reasons for such disqualification.

10.    The number of applicants, by race, ethnicity and sex as so indicated by the applicant, disqualified on the basis of a conviction and/or a history of drug abuse.

11.    The final established eligible lists, highest score first, indicating the race, ethnicity and sex of each person as so indicated by the applicant, the final score, and the number of veteran's credits, and in the case of promotions, the number of seniority credits, to which each person is determined entitled.

12.    The application forms.

13.    The locations designated within Hispanic community for the delivery of application forms.

14.    The informational pamphlets and job announcement pamphlets required by subparagraph V.B.2.

15.    The schedule of training sessions.

16.    The information, if written, provided by the State Defendants to Mount Vernon pursuant to subparagraph V.B.4.c.

17.    The written study materials prepared pursuant to subparagraph V.B.4.d.

18.    The announcement and any written description of physical strength/agility tests relating to the demonstration/ familiarization sessions provided for in subparagraph V.B.4.e.

19.    Copies of the recruitment literature and posters.

20.    Copies of the Mount Vernon Defendants' request(s) to the State Defendants to prepare, construct, and rate entry level or promotional examinations for the fire department.

C.    The information set forth in subparagraph B above shall be provided to the extent applicable with respect to fire lieutenants and fire captains.

24

D.      The Mount Vernon Defendants shall provide to plaintiff's counsel upon request a summary showing the total racial/ethnic/sex makeup of the Mount Vernon fire department.

E.      The Mount Vernon Defendants shall provide a report of all recruitment efforts within sixty days of the close of filing for positions or promotions within the fire department.

F.      The Mount Vernon Defendants will provide to plaintiff's counsel a list of the test scores for each written test for City of Mount Vernon Firefighter, Fire Lieutenant and Fire Captain titles, indicating the race, ethnicity, and sex of each candidate as so indicated by the candidate, and the total numbers of candidates by race, ethnicity, and sex.  This information shall be provided to Plaintiff's counsel within thirty (30) days of the State Defendants' transmission of the scores to the Mount Vernon Defendants pursuant to the rating of any written test they supply to the Mount Vernon Defendants.

G.      The State Defendants will provide to plaintiff's counsel a report of an item analysis ("Item Analysis Report") for each written test prepared, or constructed by the State Defendants for a City of Mount Vernon Firefighter, Fire Lieutenant or Fire Captain Examination.

1. Each Item Analysis Report shall include the following information:

i.      Examination Number, Title, and Test Date;

ii.     Subject area(s) of question;

iii.    For each question, the number of candidates identifying themselves as who answered the question with a demographic breakdown of "White", "Black" or "Hispanic";

iv.     For each question, the "Success Rate" (*i.e.*, the percent answering the question correctly) for all candidates;

v.      For each question, the number answering the question correctly and the Success Rate for candidates identifying themselves as "White";

vi. For each question, the number answering the question correctly and the Success Rate of candidates identifying themselves as "Black";

vii. For each question, the number answering the question correctly and the Success Rate of candidates identifying themselves as or "Hispanic";

viii. For each question, the ratio of the Success Rate for "Black" candidates to the Success Rate for "White" candidates; and

ix. For each question, the ratio of the Success Rate for "Hispanic" candidates to the Success Rate for "White" candidates.

2. When a candidate has identified both "Hispanic" for ethnicity and "White" as race, the Item Analysis Report will count that candidate under the "Hispanic" category when determining the ratio of the Success Rate.

3. When a candidate has identified both "Black" and "White" as race, the Item Analysis Report will count that candidate under the "Black" category when determining the ratio of the Success Rate.

4. When a candidate has identified both "Hispanic" for ethnicity and "Black" as race, the Item Analysis Report will count that candidate under both the "Hispanic" and "Black" categories when determining the ratio of the Success Rate.

5. The State Defendants shall provide the Item Analysis Report to plaintiff's counsel within ninety (90) days of the State Defendants' completion of the rating of any written test they supply to the Mount Vernon Defendants. The State Defendants shall retain these documents for a period of no less than ten (10) years.

H. The State Defendants shall provide two reports identifying the test scores achieved by candidates participating in a written test developed by the State Defendants and administered by City of Mount Vernon for the Firefighter, Fire Lieutenant or Fire Captain titles.

One report shall include the results from all written test questions in the examination counted in the scoring (the "Standard Report"). The second report shall include the results from all written test questions in the examination, but with scores adjusted to reflect the deletion of questions with a Success Rate Ratio lower than eighty percent (80%) for the Firefighter and Fire Lieutenant titles and lower than seventy-five percent (75%) for the Fire Captain title (the "Adjusted Report").

1. Both reports shall contain the following summary information for each test score:

   i.  Examination Number, Title, and Test Date;

   ii.  Number of raw score points that equate to 70% of the maximum possible and to the recommended passpoint;

   iii.  A high to low (descending score order) listing of each test score achieved by one or more of the candidates participating in the city's examination;

   iv.  The total number of candidates that achieved each score;

   v.  The total number of accumulated candidates that achieved each test score or higher (high to low cumulative frequency distribution of test scores);

   vi.  The total number of accumulated "White" males that achieved each test score or higher;

   vii.  The total number of accumulated "White" females that achieved each test score or higher;

   viii.  The total number of accumulated "Black" males that achieved each test score or higher;

      x.     The total number of accumulated "Black" females that achieved each test score or higher;

      xi.    The total number of accumulated "Hispanic" males that achieved each test score or higher;

      xii.   The total number of accumulated "Hispanic" females that achieved each test score or higher; and

      xiii.  The total number of accumulated candidates who did not identify sex or ethnicity that achieved each test score or higher.

2.     The State Defendants shall provide the Standard Report and the Adjusted Report to plaintiff's counsel within ninety (90) days of the State Defendants' completion of the rating of any written test they supply to the Mount Vernon Defendants. The State Defendants shall retain these documents for a period of no less than ten (10) years.

3.     Plaintiff's counsel may request documents or other information related to those questions with a Success Rate Ratio lower than eighty percent (80%) for the Firefighter and Fire Lieutenant titles and lower than seventy-five percent (75%) for the Fire Captain title to assess the potential disparate impact in line with the objectives of the 2024 Consent Judgment.

I.     Nothing in this subparagraph shall be deemed to waive the State Defendants' ability to object to a request for information pursuant to subparagraph (G) and/or (H) above on the ground that the information sought is not reasonably related to assessing whether a test has a disparate impact, is unduly burdensome, or seeks privileged information.  In the event that the State Defendants object to a request made pursuant to subparagraph (G) and/or (H) above, the plaintiffs and the State Defendants shall meet and confer in an attempt to resolve any dispute regarding the request.  In the event the parties are unable to resolve the dispute, the parties may seek appropriate relief from the Court.

J.      For purpose of a computational review requested by any individual pursuant to New York State Civil Service Law who has taken a test governed by this 2024 Consent Judgment, the State Defendants shall maintain a record of each individual's test results so that an individual requesting a computational review may determine whether his or her test results included results from a question to which paragraph II.B.1.b of this 2024 Consent Judgment applied, and, if so, how the inclusion of results from the question(s) affected his or her test results.

K.      The information set forth in sub-paragraphs B, C, and F above shall be made available to plaintiff's counsel within thirty days of its availability to the Mount Vernon or State Defendants.

L.      The parties to this 2024 Consent Judgment shall stipulate to protect the confidentiality of the State's written tests and the right to privacy of any individual.

## VII.    General Injunctive Relief and Compliance

A.      As part of this Court's continuing jurisdiction over this case, plaintiff may petition this Court for appropriate injunctive or other relief, not including contempt in the first instance, in the event of any claim that the Mount Vernon and the State Defendants, or either of them, are engaged in any act or practice on or after the date of this 2024 Consent Judgment which act or practice has the purpose or effect of unlawfully discriminating in recruitment, hiring, promotion, compensation, terms, conditions, or privileges of employment with respect to any past, present or future employee in or any applicant for employment to the fire department of Mount Vernon on the basis of race, color, sex or national origin. The foregoing shall not be construed to limit the Court's authority to hold the Mount Vernon and the State Defendants, or either of them, in contempt in any instance where the Court finds that such Defendants, or either of them, have intentionally violated the specific mandates of Sections II, III, IV, V, and VI of this 2024 Consent Judgment. Provided, however, that

compliance with Sections II, III, IV, V, and VI of this 2024 Consent Judgment shall be deemed

compliance with the equal employment provisions of the federal statutes cited in this 2024 Consent

Judgment and in effect on the date of the entry of this 2024 Consent Judgment with respect to

recruitment, hiring and promotion of fire department employees and applicants for employment,

insofar as the Mount Vernon and the State Defendants do not add to or otherwise modify

qualifications or procedures for hiring or promotion which are in effect as of the date of this 2024

Consent Judgment or required under its terms.

B.      Such additional equal employment opportunity practices as may be required by

federal law not in effect on the date of the entry of this 2024 Consent Judgment are not addressed by

this 2024 Consent Judgment.

C.      In the event that any of the provisions of this 2024 Consent Judgment are found to be

inconsistent with any state or local civil service statute, law or regulation, the provisions of this 2024

Consent Judgment shall control.

D.      Wherever it is provided in this 2024 Consent Judgment that plaintiff and the Mount

Vernon and/or State Defendant, or their respective counsel, shall consult with each other or that the

consent of plaintiff is required, the plaintiffs in case No. 78 Civ. 911 (JGLC)(S.D.N.Y.) shall also be

consulted.

E.      In the event Mount Vernon exercises the option retained by it under paragraph

II.B.l.g. of this 2024 Consent Judgment, the obligations of the State Defendants existing pursuant to

the provisions of this 2024 Consent Judgment with respect to Mount Vernon shall abate for the

period and to the extent of the exercise of such option.

## VIII.   Jurisdiction

A.      This Court retains jurisdiction of this action for such further orders as may be

necessary or appropriate.

B.     On or before the last business day of January 2027, and every two years thereafter, the parties shall file a joint report with the Court setting forth: (i) the extent of the progress made under this 2024 Consent Judgment; (ii) the efforts currently underway to comply with this 2024 Consent Judgment; and (iii) whether and why the Consent Judgment should remain in effect.

C.     At any time, the Mount Vernon or State Defendants may move the Court, upon sixty (60) days' notice to the other parties to this Consent Judgment, for dissolution of this 2024 Consent Judgment with respect to such Defendants; and in considering whether the 2024 Consent Judgment should be so dissolved, the Court will take into account whether those Defendants have complied with this 2024 Consent Judgment and whether the objectives of the 2024 Consent Judgment have been achieved.

Date: _4/15_, 2025
New York, New York

*For the United States:*

MATTHEW PODOLSKY
Acting United States Attorney

By:     _____
DAVID J. KENNEDY
Assistant United States Attorney
86 Chambers Street, 3ʳᵈ Floor
New York, NY 10007
Ph.: (212) 637-2733
david.kennedy2@usdoj.gov

*For Mount Vernon Defendants:*

By:     _____
Jeffrey D. Buss
Smith Buss & Jacobs, LLP
733 Yonkers Avenue, Suite 200
Yonkers, NY 10704
(914) 476-0600
jbuss@sbjlaw.com

*For State Defendants:*

LETITIA JAMES
Attorney General
State of New York

By:  *Elizabeth A. Figueira*  4/21/2025
ELIZABETH FIGUEIRA
~~Assistant~~ Attorney General
28 Liberty Street
New York, NY 10005
Elizabeth.figueira@ag.ny.gov

The Clerk of Court is directed to terminate ECF No. 283.

SO ORDERED.

HON. JESSICA G. L. CLARKE
UNITED STATES DISTRICT JUDGE

Dated: June 3, 2025
        New York, New York

32